## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

PEDRO AGUIRRE, on behalf of himself
and all others similarly situated,

Plaintiff,

No. _____

v.

MOSAIC POTASH CARLSBAD INC.,

Defendant.

## ORIGINAL CLASS ACTION COMPLAINT

**Nature of the Case**

1. Plaintiff Pedro Aguirre brings this class action to recover unpaid wages and other damages from Mosaic Potash Carlsbad Inc. ("Mosaic" or Defendant)

2. Defendant employed Plaintiff as one of its Hourly Employees (defined below).

3. Plaintiff and the other Hourly Employees regularly work more than 8 hours a day and 40 hours a week.

4. Defendant, however, does not pay Plaintiff and the other Hourly Employees for all their hours worked, including overtime hours.

5. Rather, Defendant requires Plaintiff and the other Hourly Employees to suit up in protective clothing and safety gear necessary to safely and effectively perform their job duties, while on Defendant's premises, prior to "clocking in."

6. Likewise, Defendant requires Plaintiff and the other Hourly Employees to wash-up and change out of their safety gear and protective clothing (commonly referred to as Personal Protective Equipment, or "PPE"), while on Defendant's premises, after "clocking out." (¶¶ 5-6 together, Defendant's "pre/post shift off the clock policy").

1

7. Defendant does not pay Plaintiff and other Hourly Employees for the time they spend donning and doffing their safety gear and protective clothing and washing-up, "off the clock," before and after their paid shifts, whether at an overtime rate or at any other rate.

8. Defendant's pre/post shift off the clock policy violates the New Mexico Minimum Wage Act (NMMWA) by depriving Plaintiff and the other Hourly Employees of overtime wages earned for their work in excess of 8 hours in a workday and/or 40 hours in a workweek.

9. The NMMWA does not incorporate the federal Portal-to-Portal Act's exclusions related to preliminary and postliminary activities.

10. Unlike federal law, the NMMWA requires compensation for all time worked on the employer's premises, including time spent donning and doffing PPE. Therefore, preparatory and concluding activities that would be excluded under the Portal-to-Portal Act under the FLSA are covered under the NMMWA. *Segura v. J.W. Drilling, Inc., 2015-NMCA-085, ¶ 9, 355 P.3d 845, 848*, 2015-NMCA-085, ¶ 9, 355 P.3d at 848 ("[T]he exclusions in the Portal-to-Portal Act are completely absent from the MWA. There being no analogue in the MWA, the interpretations of the Portal-to-Portal Act in case law are unhelpful.").

11. Plaintiff brings this action as a class action on behalf Hourly Employees who were subjected to Defendant's company-wide policy of failing to pay employees for time spent donning and doffing PPE.

**Jurisdiction and Venue**

12. This Court has jurisdiction over this matter because the parties are diverse under 28 U.S.C. § 1332.

13. Plaintiff is a citizen of New Mexico and Defendant is a citizen of Delaware with its principal place of business in Tampa, Florida. *See* 28 U.S.C. § 1332.

14. The amount in controversy in this class action exceeds $75,000. *See* 28 U.S.C. § 1332.

15. The Court has personal jurisdiction over Defendant because:
    a. Defendant conducts substantial business operations in New Mexico;
    b. Defendant employs hundreds of workers in New Mexico;
    c. Defendant operate a mining facility in New Mexico;
    d. The events giving rise to this action occurred in New Mexico; and
    e. Defendant has availed themselves of New Mexico laws and protections.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

**The Parties**

17. Plaintiff worked for Defendant as an underground mechanic between 2021 and July 17, 2024.

18. During his employment by Defendant, Plaintiff regularly worked more than 40 hours per week.

19. During his employment by Defendant, Defendant subjected Plaintiff to its pre/post shift off the clock policy.

20. Plaintiff brings this class action on behalf of himself and other employees of Defendant who were subjected to Defendant's pre/post shift off the clock policy.

21. The NMMWA class is defined as:

    **All Defendant's hourly employees who worked at an operation owned, operated, and/or controlled by Defendant in the State of New Mexico since 2009 ("Hourly Employees").**

22. At all relevant times, Defendant has employed Plaintiff and Hourly Employees within the meaning of the NMMWA.

23. Defendant may be served with process as follows: Corporation Service Company, 110 E. Broadway St., Hobbs, NM 88240.

**Background Facts**

24. Defendant's parent corporation, the Mosaic Company, claims to operate "seven potash and phosphate mining facilities primarily located in Saskatchewan and Florida, along with five phosphate concentrates sites in Louisiana and Florida. Our products account for 73% and 40% of North America's phosphate and potash annual production, respectively." https://mosaicco.com/North-America-Business (last visited January 20, 2024).

25. One of those potash and phosphate mining operations is Defendant, which is one of the largest underground mines in the United States mining two separate potassium minerals: sylvite and langbeinite.

31. To meet its business objectives, Defendant employs workers, including Plaintiff and the other Hourly Employees, including employees supplied by staffing agencies like WTS, to mine and produce potassium minerals for market.

32. For example, Defendant employed Plaintiff as an underground mechanic from approximately March 2021 until July 2024.

33. As an underground mechanic, Plaintiff's job duties included, among other things: performing preventive maintenance and repairs on mining equipment like continuous miners, push plate cars, roof bolters, conveyor systems, and hydraulic systems; troubleshooting mechanical, hydraulic, and electrical problems on mining machinery; and welding and fabricating parts when needed.

34. Plaintiff's job duties likewise included donning and doffing his safety gear and protective clothing and washing up, on Defendant's premises, before and after his scheduled shifts.

35. Throughout his employment, Plaintiff was required to report his "on the clock" hours worked via Defendant's designated timekeeping system.

36. Thus, Defendant's employment records reflect Plaintiff's recorded, "on the clock" hours.

37. Plaintiff regularly worked for Defendant more than 8 hours a workday and 40 hours a workweek.

38. But Defendant did not pay Plaintiff for all his hours worked.

40. Instead, Defendant subjected Plaintiff to its pre/post shift off the clock policy.

41. Specifically, Defendant required Plaintiff to dress out in protective clothing and safety gear (including hard hat, reflective clothing, ear plugs, steel toed boots, safety glasses, gloves, self-contained self-rescuer, tracker, respirator, dust mask) and be ready to work prior to his scheduled shift, all "off the clock," and without compensation.

42. Donning and doffing this clothing and gear before his paid shift began was, therefore, part of Plaintiff's regular, required duties for Defendant. It required effort from Plaintiff every workday and took Plaintiff at least 20 and up to 40 minutes each workday.

43. Plaintiff could not perform his job duties in accordance with Defendant's policies, procedures, and expectations without this protective clothing and safety gear.

44. Plaintiff could not safely perform his job duties in accordance with Defendant's policies, procedures, and expectations without this protective clothing and safety gear.

45. Much of the protective clothing Plaintiff utilized is mandated by federal regulation. *See* 29 C.F.R. § 1910.132; 30 C.F.R. § 56, *et seq*; 30 C.F.R. § 57, *et seq*.

46. At the end of each workday, Plaintiff likewise customarily removed his safety gear and protective clothing and washed up each day after the end of his paid shift, all "off the clock" and without compensation.

47. Removing this clothing and gear after his paid shift ended was, therefore, part of Plaintiff's regular, required duties for Defendant. It required effort from Plaintiff every workday and took Plaintiff approximately 15 minutes each workday.

48. Plaintiff could not perform his job duties in accordance with Defendant's policies, procedures, and expectations without removing this safety gear and protective clothing and washing up each workday.

49. Plaintiff could not safely perform his job duties and then end his work day in accordance with Defendant's policies, procedures, and expectations without removing this safety gear and protective clothing and washing up each day.

50. However, under its pre/post shift off the clock policy, Defendant did not compensate him for the same.

51. As a result, because of its pre/post shift off the clock policy, Defendant failed to pay Plaintiff overtime wages for all his overtime hours worked in violation of the NMMWA.

52. Plaintiff and the other Hourly Employees, including Hourly Employee supplied to Defendant by staffing agencies like WTS, perform their jobs under Defendant's supervision and use materials, equipment, and technology Defendant approves and supplies.

53. Defendant required Plaintiff and the other Hourly Employees to follow common work, time, pay, and overtime policies and procedures in the performance of their jobs.

54. Plaintiff and the other Hourly Employees receive wages from Defendant that are determined by common systems and methods that Defendant selects and controls.

55. Like Plaintiff, other Hourly Employees customarily work in excess of forty (40) hours in a week.

56. But, just as with Plaintiff, Defendant fails to pay the other Hourly Employees for all their hours worked.

57. Defendant subjects its other Hourly Employees to the same or similar pre/post shift off the clock policy it imposed on Plaintiff.

58. Specifically, just as with Plaintiff, Defendant requires Hourly Employees to dress out in their protective clothing and safety gear (including hard hat, reflective clothing, ear plugs, steel toed boots, safety glasses, gloves, SCSR, respirator, dust mask, tracker) and be ready to work prior to their scheduled paid shifts, "off the clock" and without compensation.

59. And Defendant requires Hourly Employees to remove their safety gear and protective clothing and wash up after their shifts, likewise, "off the clock" and without compensation.

60. And like Plaintiff, much of the gear they must utilize is mandated by federal regulation. *See* 29 C.F.R. § 1910.132; 30 C.F.R. § 56, *et seq*; 30 C.F.R. § 57, *et seq*.

61. But, like Plaintiff, the other Hourly Employees are forced to perform this compensable work "off the clock" before and/or after their shifts for Defendant's benefit.

62. As a result, just as with Plaintiff, Defendant does not pay the other Hourly Employees for this work they perform "off the clock" before and after their scheduled shifts.

63. And, just as with Plaintiff, these job duties take the other Hourly Employees approximately 45 minutes to an hour and a half to complete each workday.

64. Defendant fails to exercise its duty as the Hourly Employees' employer to ensure they are not performing work "off the clock" that Defendant does not want performed.

65. And Defendant knows, should know, or recklessly disregards whether Plaintiff and the other Hourly Employees routinely perform work "off the clock," and without compensation, before and after their scheduled shifts.

66. Thus, Defendant requires, requests, suffers, permits, or allows Plaintiff and the other Hourly Employees to work "off the clock," without compensation, before and after their scheduled shifts.

67. Despite accepting the benefits, Defendant does not pay Plaintiff and the other Hourly Employees for the compensable work they perform "off the clock" before and after their scheduled shifts.

68. Thus, under Defendant's uniform pre/post shift off the clock policy, Plaintiff and the other Hourly Employees are denied overtime pay for the compensable work they perform "off the clock" before and after their scheduled shifts during workdays in which they work more than 8 hours and workweeks in which they work more than 40 hours, in violation of the NMMWA.

69. To perform these operations, Defendant employs hundreds of workers in various hourly positions, including underground miners and mechanics, processing plant operators, maintenance workers, and loadout operators.

70. Defendant's employees work long hours on rotating shifts to keep the mines and processing facilities operating, often 24 hours per day, 7 days per week.

**Class Action Allegations**

71. Plaintiff brings his claims as a class action under FED. R. CIV. P 23 on behalf of himself and the other Hourly Employees.

72. Like Plaintiff, the other Hourly Employees are owed wages by common application of Defendant's pre/post shift off the clock policy.

8

73. Other Hourly Employees worked with Plaintiff and were paid in the same manner, performed similar work, and were subject to Defendant's same pre/post shift off the clock policy.

74. Based on his experience with Defendant, Plaintiff is aware Defendant's pre/post shift off the clock policy were imposed on other Hourly Employees.

75. The Hourly Employees are similarly situated in the most relevant respects.

76. As a result, the specific job titles or job locations of the Hourly Employees do not prevent class or collective treatment.

77. Defendant's records reflect the number of "on the clock" hours the Hourly Employees worked each workweek.

78. Plaintiff's experiences are typical of the experiences of the other Hourly Employees.

79. Plaintiff has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

80. Like each Hourly Employee, Plaintiff has an interest in obtaining the unpaid wages owed under the NMMWA.

81. Plaintiff and his counsel will fairly and adequately protect the interests of the Hourly Employees.

82. Plaintiff retained counsel with significant experience in handling complex class and collective action litigation.

83. Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Defendant will reap the unjust benefits of violating the NMMWA.

84. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

85. Indeed, the multiplicity of actions would create hardship to the Hourly Employees, the Court, and Defendant.

86. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

87. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

88. Among the common questions of law and fact are:

    a. Whether Defendant imposed its pre/post shift off the clock policy on the Hourly Employees;

    b. Whether Defendant's pre/post shift off the clock policy deprived the Hourly Employees of overtime compensation for all overtime hours worked;

    c. Whether Hourly Employees worked hours over 40 in individual workweeks;

    d. Whether Defendant's practices violated the NMMWA; and

    e. The proper measure of damages.

89. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class and collective action.

90. As part of its regular business practices, Defendant violated the NMMWA with respect to Plaintiff and the other Hourly Employees.

91. The Hourly Employees are known to Defendant, are readily identifiable, and can be located through Defendant's business and personnel records.

**Continuing Course of Conduct Allegations**

92. Effective June 19, 2009, the NMMWA was amended to provide that civil actions "may encompass all violations that occurred as part of a continuing course of conduct *regardless of the date on which they occurred*." NMSA 1978 § 50-4-32 (emphasis added).

93. Upon information and belief, Defendant has operated potash mining and surface processing facilities in New Mexico since June 2009.

94. Upon information and belief, Defendant has employed Hourly Employees at its New Mexico facilities since June 2009.

95. Upon information and belief, Defendant has required Hourly Employees to don and doff PPE at its New Mexico facilities since June 2009.

96. Since June 2009, Hourly Employees have worked more than 40 hours per week in individual workweeks.

97. Since June 2009, Defendant has failed to pay Hourly Employees for time spent donning and doffing PPE.

98. Since June 2009, Defendant has failed to pay Hourly Employees overtime pay when they worked more than 40 hours per week in one or more individual workweeks.

**Count I**
**VIOLATION OF THE NEW MEXICO MINIMUM WAGE ACT**
**Class Action**

99. Plaintiff incorporates all previous paragraphs by reference.

100. At all relevant times, Defendant was Plaintiff's and Hourly Employees' "employer" as defined by the NMMWA.

101. At all relevant times, Plaintiff and Hourly Employees were Defendant's "employees" as defined by the NMMWA.

102. The NMMWA requires employers to pay employees overtime wages at one and one-half times their regular rate of pay for all hours worked over 40 in a workweek.

103. The NMMWA requires compensation for all hours worked on the employer's premises, including time spent donning and doffing PPE.

104. Unlike the federal Fair Labor Standards Act, the NMMWA does not incorporate the Portal-to-Portal Act's exclusions for preliminary and postliminary activities.

105. Plaintiff and Hourly Employees regularly worked more than 40 hours per workweek.

105. Defendant violated the NMMWA by:

   a. Requiring Plaintiff and Hourly Employees to don and doff PPE without compensation;

   b. Failing to maintain accurate records of all time worked;

   c. Failing to pay proper overtime wages for all hours worked over 40 in a workweek.

106. Defendant's violations of the NMMWA with respect to Plaintiff and Hourly Employees occurred as part of a continuing course of conduct under N.M. Stat. Ann. 1978 § 50-4-32.

107. Because Defendant's violations of the NMMWA occurred as part of a continuing course of conduct, Plaintiff and Hourly Employees are entitled to recover for all such violations regardless of the date on which they occurred.

108. As a result of Defendant's violations, Plaintiff and Hourly Employees have suffered damages in amounts to be determined at trial.

**Requested Relief**

Plaintiff and Hourly Employees pray for relief as follows:

   a. An order certifying this case as a class action;

    b.      Designation of Plaintiff as class representative;

    c.      Designation of Plaintiff's counsel as class counsel;

    d.      An award of unpaid overtime wages;

    e.      An award of treble damages pursuant to N.M.S.A. § 50-4-26(C);

    f.      An award of reasonable attorneys' fees and costs;

    g.      Pre- and post-judgment interest;

    h.      An injunction prohibiting Defendant from continuing to violate the NMMWA; and

    i.      Such other and further relief as the Court deems just and proper.

**Jury Demand**

Plaintiff demands a trial by jury on all issues so triable.

                                        Respectfully submitted,

                                        */s/ Sarah J. Arendt*

                                        Douglas M. Werman
                                        Sarah J. Arendt
                                        John J. Frawley
                                        **WERMAN SALAS P.C.**
                                        77 W. Washington, Suite 1402
                                        Chicago, Il 60602
                                        Telephone: (312) 419-1008
                                        Facsimile: (312) 419-1025
                                        dwerman@flsalaw.com
                                        sarendt@flsalaw.com
                                        jfrawley@flsalaw.com

                                        ***Attorneys for Plaintiff***